# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| IN RE:<br><br>MUHAMMAD NASIR SIDDIQI<br><br>DEBTOR | CASE NO. 19-42834<br>CHAPTER 7 |
| MARK A. WEISBART,<br>CHAPTER 7 TRUSTEE<br><br>PLAINTIFF<br>V.<br><br>MUHAMMAD NASIR SIDDIQI<br><br>DEFENDANT | ADVERSARY NO. 21-04077 |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF

Mark A. Weisbart, in his capacity as the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate of Muhammad Nasir Siddiqi (hereinafter referred to as, "Plaintiff" or "Trustee"), pursuant to FED.R.CIV.P. 56 ("Rule 56"), made applicable hereto by FED.R.BANKR.P 7056 ("Rule 7056"), files this Motion for Summary Judgment and Supporting Brief (the "Motion") requesting summary judgment as to the claims asserted in his Complaint.   In support of the relief requested, Plaintiff would respectively show the Court as follows:

### I. SUMMARY

1.     Specifically, Plaintiff seeks judgment on his claims brought under 11 U.S.C. §727(a)(3), (a)(4)(A) and (D), and (a)(6)(A), and a determination that the Debtor, Muhammad Nasir Siddiqi (hereinafter, "Defendant") is denied a discharge under 11 U.S.C § 727.

## II. JURISDICTION

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the standing Order of Reference for the United States District Court for the Eastern District of Texas.

3.      This adversary proceeding is brought pursuant to Section 727 of title 11 of the United States Code (the "Bankruptcy Code") and FED.R.BANKR.P. 7001.

4.      The claims asserted in this adversary proceeding constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(J).

5.      Venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. PROCEDURAL BACKGROUND

6.      On October 16, 2019 (the "Petition Date"), Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code commencing the above-referenced bankruptcy case (the "Case"). [EX A; see also, Complaint, ¶ 6 and Answer, ¶ 6 (as hereinafter defined)].

7.      By orders entered by the Court during the course of the Case, the deadline to file objections to discharge was extended to May 3, 2021.[1]

8.      On May 3, 2021, Plaintiff filed his Complaint Objecting to Discharge [Adv Doc 1] (the "Initial Complaint") seeking to deny Debtor's discharge pursuant to 11 U.S.C. § 727.

9.      On June 6, 2021, Defendant filed his Original Answer [Adv Doc 5] (the "Original Answer").

10.     On September 29, 2021, Plaintiff filed his First Amended Complaint Objecting to Discharge [Adv Doc 13] (the "Complaint") asserting additional factual allegations and adding

---

[1] See, Case Doc Nos. 29, 49, 54, 69, 79 and 88 (collectively, the "Extension Orders"). Plaintiff requests that pursuant to FED.R.EVID. 201 that the Court take judicial notice of the Extension Orders. All references herein to "Case Doc" and "Adv Doc" shall refer to documents of record in the Case and this adversary respectively.

claims seeking to deny Debtor's discharge. The Complaint seeks to deny Defendant a discharge under 11 U.S.C. § 727(a)(3), (a)(4)(A) and (D), and (a)(6)(A).

11.     On October 12, 2021, Defendant filed his Original Answer [Adv Doc 15] (the "Answer") denying the relief sought.

### IV.  PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

12.     Plaintiff submits the following documents in support of this Motion, all of which are attached as exhibits hereto and fully incorporated herein by reference:

- Exhibit A – Debtor's original bankruptcy Petition [Case Doc 1].

- Exhibit B – Debtor's original Schedules and Statement of Financial Affairs [Case Doc 14].

- Exhibit C – Debtor's amended Schedules [Case Doc 110].

- Exhibit D – Trustee's Objection to Exemptions [Case Doc 36].

- Exhibit E – Agreed Order on Trustee's Objection to Exemptions dated September 28, 2020 [Case Doc 64].

- Exhibit F – Motion to Show Cause Why the Debtor Should Not be Held in Contempt or Sanctioned [Case Doc 101].

- Exhibit G – Order of Contempt [Case Doc 108].

- Exhibit H – Trustee's document request, November 21, 2019.

- Exhibit I – Defendant's document production, December 11, 2019.

- Exhibit J – Trustee's document request February 17, 2020.

- Exhibit K –Subpoena issued to Debtor, November 16, 2020.

- Exhibit L – Defendant's document production, December 14, 2020.

- Exhibit M – Motion to Compel Compliance with Subpoena and Recovery of Fees and Costs [Adv Doc 20].

- Exhibit N – Debtor's Response to Motion to Compel Compliance with Subpoena [Adv Doc 26].

- **Exhibit O** – Order to Compel Compliance with Subpoena [Adv Doc 27].

- **Exhibit P** – *Affidavit of Mohammad Siddiqi in Support of Response to Motion to Compel* [Adv Doc 31].

- **Exhibit Q** – General Warranty Deed for real property located at Lot Nine (9) of Block "B" of the Reeder Addition to the Town of Knox City in Knox County, Texas.

- **Exhibit R** – Excerpts of Deposition of Muhammad Nasir Siddiqi with the following deposition exhibits:

  - EX 1 -- Subpoena to Testify at a Deposition

  - EX 2 -- Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises

  - EX 3 -- Order to Compel Compliance with Subpoena

- **Exhibit S** – Certified Copies from the Office of Secretary of State of Texas of documents concerning AZ & Hiba Entertainment formation documents.

- **Exhibit T** – Certified Copies from the Office of Secretary of State of Texas of documents concerning DFW Investigation & Protection Services, Inc.

- **Exhibit U** – Certified Copy from the Office of Secretary of State of Texas of documents of Application for Reinstatement for DFW Investigation & Protection Services, Inc.

- **Exhibit V** – Certified Copy from the County Clerk, Dallas County, of Assumed Name Certificate for DFW Investigation & Protection.

- **Exhibit W** – [intentionally omitted]

- **Exhibit X** – [intentionally omitted]

- **Exhibit Y** – [intentionally omitted]

- **Exhibit Z** – Declaration of JPMorgan Chase Bank concerning bank documents of Defendant

- **Exhibit AA** – General Warranty Deed for real property located at 1109 Lakestream Drive, Plano, Texas, recorded on July 19, 2018, in Collin County, Texas.

- Exhibit BB – Special Warranty Deed for real property located at 14411 Tanglewood Drive, Farmers Branch, Texas, 75234 recorded on March 13, 2019, in Dallas County, Texas.

- Exhibit CC – Declaration of Mark A. Weisbart, Trustee.

- Exhibit DD – Declaration of JPMorgan Chase Bank concerning bank documents of Jamela Siddiqi

13.     Plaintiff further requests that the Court take judicial notice in accordance with FED.R.EVID. 201 of all pleadings of record in the Case and this adversary proceeding.

## V. STATEMENT OF UNDISPUTED MATERIAL FACTS

14.     On October 16, 2019, Defendant filed his voluntary petition under Chapter 7 of the Bankruptcy Code commencing the above-referenced bankruptcy case (the "Petition Date"). [EX A].

15.     On November 8, 2019, Defendant filed his Schedules (the "Schedules") and Statement of Financial Affairs ("SOFA"). [EX B]. These Schedules and Statement of Financial Affairs were certified by Defendant under penalty of perjury as being true and correct.[2] The Schedules and Statement of Financial Affairs were not amended prior to the commencement of this adversary proceeding. [See, Case docket sheet]. Defendant amended his Schedule A/B in October 2021, five months after the filing of the Initial Complaint. [EX C].

16.     The Defendant provided sworn testimony at his First Meeting of Creditors on November 13, 2019 (the "Initial Meeting") and at the continued meeting of creditors on December 13, 2019 (the "Continued Meeting"). [Complaint, ¶ 8, Answer, ¶ 8, EX CC, ¶ 4].

17.     At the Initial Meeting, Defendant testified, under oath, to the following:

   a) That he had reviewed his Petition, Schedules and Statement of Financial Affairs before they were filed; that no changes to these documents were required; that all his assets were listed on his Schedules; and that such documents were true and correct when signed; and

---

[2] See notation on the Case docket 10/24/2019 of recording of Declaration of Electronic Filing.

   b) That the Defendant owned a business, Hiba Entertainment ("Hiba") that
   sponsored concerts of an Indian or Pakistani nature and that the business is no
   longer operating.

[Complaint, ¶ 8, Answer, ¶ 8, EX CC, ¶ 5].

18.   On his original and amended Schedule A/B the sole interest in real property identified by Defendant was his home located at in 6701 Haven Hurst, Allen, TX 75002 (the "Home"). [EX B, p. 3; EX c, p. 1].   Defendant did not disclose on either his original or amended Schedule A/B his interest in real property located in Knox City, Texas, more commonly referred to as 805 South Aspen Avenue, Knox City, Knox County, Texas 79529 (the "Knox Property") which in acquired by General Warranty Deed dated July 26, 2016, and recorded in the Knox County deed records on October 17, 2017. [EX Q].[3]

19.   Defendant also received payments from Dallas County attributable to certain real property used in HUD Section 8 housing (the "Section 8 Property").   [EX Z, bate stamped pgs. 1261-62, 1300-01, 1420-21, 1459-60, 1522-23 (the "HUD Payments"). Neither Defendant's original or amended Schedule A/B disclosed any interest in real property related to the HUD Payments nor did Defendant's response to SOFA Q.18 identify the sale or transfer of any property within the 2 years prior to the Petition Date. [EX B, p. 33-34]. Further, the HUD Payments are not disclosed as income by Defendant on his SOFA, Q 4-5, p 29-30].[4]

20.   Defendant's original and amended Schedule A/B and his response to SOFA Q

---

[3] Since Defendant acquired the Knox Property expenses associated with the property have been paid from his personal bank account at Chase Bank, ending in 1773. See EX Z, bate stamped pgs. 1184, 1202, 1205, 1217, 1239, 1268, 1277, 1287, 1302, 1318, 1327 and 1403. Defendant further falsely testified that other than the Home, he did not have any other real estate in 2018. [EX R, p. 44].

[4] In his deposition on March 24, 2021, Defendant testified, and his counsel confirmed, that the boxes of SOFA, Q 4 indicating his gross income for 2017 and 2018 were from the operation of a business were in checked in error and that the income reflected derived from his wages and commissions from his employer Eagle Protective Group. [EX R., pgs. 66-67].

failed to disclose Defendant's interests in in the following entities and assets:

    a)  AZ & Hiba Entertainment, Inc. ("AZ & Hiba") which was formed in September 2018. [EX S; EX R, pgs. 122-124].[5]

    b)  DFW Investigative & Protection Services, Inc. d/b/a DFW Investigative & Protection formed in 2016 and has retained its status as a going concern [EX T; EX U; EX V; EX R, pg. 126].

    c)  Licenses obtained and held by Defendant necessary for the operation of his former wife's security business, Eagle Protective Group.[6]

    21.    Debtor failed to identify income he received in 2017, 2018 and 2019 thru the

Petition Date in response to SOFA Q. 5, for the HUD Payments, rental income from 8114 Carson

Court, Rowlett, Texas, and from unidentified sources including the following:

    a)  Loan payment from WS Capital USA LLC in February 2017 in the amount of $7,598.31 [EX Z, pgs. 1144-45];
    b)  Deposit of $1,000 by MoneyGram dated May 19, 2017 [EX Z, pgs. 1192-93];
    c)  Check in the amount of $2,431.00 for a lease down payment and monthly rent dated October 22, 2017 [EX Z, pg. 1257];
    d)  Check in the amount of $7,600 on November 15, 2017, from Dallas County [EX Z, pg. 1262];
    e)  Deposit of $4,500 on February 20, 2018 [EX Z, pg. 1290];
    f)  Deposit of $917.00 on March 13, 2018, from Dallas County [EX Z, pgs. 1300-01];
    g)  Three deposits totaling $11,000 in cash in August 2018 [EX Z, pgs. 1342, 1347-8, and 1354-57];
    h)  Deposit of $700 money order dated June 6, 2018, for Rowlett rent [EX Z, pgs. 1345-6];
    i)  Deposit of $2,000 in cash on September 20, 2018 [EX Z, pgs. 1368 and 1371];
    j)  Deposit of $350 money order on August 13, 2018, for Rowlett rent [EX Z, pg. 1369];
    k)  Deposit of $700 money order on September 10, 2018, for Rowlett rent [EX Z, pg. 1370];
    l)  ATM Cash Deposit of $3,400 on October 17, 2018 [EX Z, pgs. 1379-80];

---

[5] In his deposition, Defendant testified that the opening of AZ & Hiba in September 2018 by his daughter was his idea and she would be the "front person" for him. [EX R, pgs 123-124]. He further testified that AZ & Hiba had not opened bank account. [EX R, pg. 124, lines 12-13]. This testimony was false.  In August 2019, Defendant received a check in the sum of $5,000 from AZ & Hiba and two wire transfers in January 2019 in the aggregate amount of $17,500 (the "AZ & Hiba Payment"). [EX Z, pgs. 1406 and 1546].

[6] Defendant testified that he holds five licenses for use in Eagle's operations, a manager license, a security guard license, commission license, personal protection officers license and a supervisor license. [EX R, pgs. 108-111].

m) Deposit of cashier check for $3,500 on November 19, 2018 [EX Z, pgs. 1390-91];

n) ATM Cash Deposit of $4,000 on December 17, 2018 [EX Z, pgs. 1401-02];

o) Receipt of wire transfers totaling $17,500 f/b/o AZ & Hiba on January 9, 2019 [EX Z, pg. 1406]

p) Deposit of $4,500 in cash on January 17, 2019 [EX Z, pg. 1413-14];

q) Deposit of $2,502.99 on February 13, 2019, from Dallas County [EX Z, pgs. 1420-21];

r) ATM Cash Deposit of $3,000 on February14, 2019 [EX Z, pgs. 1423-24];

s) Deposit of $5,000 in cash on February 19, 2019 [EX Z, pgs. 1427-28];

t) Two deposits totaling $5,500 in cash on March 18, 2019 [EX Z, pgs. 1435-38];

u) Deposit of $3,000 in cash on March 25, 2019 [EX Z, pgs. 1444-45];

v) Deposit of $1,428.00 on April 23, 2019, from Dallas County [EX Z, pgs. 1459-60];

w) ATM Cash Deposit of $2,500 in cash on May 20, 2019 [EX Z, pgs. 1471-72];

x) Nine ATM Cash Deposits totaling $4,940 in cash on May 21, 2019 [EX Z, pgs. 1473-91];

y) Deposit of $1,000 in cash on June 21, 2019 [EX Z, pgs. 1509-10];

z) Deposit of two checks totaling $3,496 on July 11, 2019, from Dallas County [EX Z, pgs. 1522-23];

aa) Deposit of $4,000 in cash on July 11, 2019 [EX Z, pgs. 1525-26];

bb) Deposit of $5,000 check from AZ & Hiba on August 19, 2019 [EX Z, pgs. 1545-46];

22.   In response to SOFA Q 8 and 18, Defendant failed to disclose his transfer of interests in two properties to Jamela Siddiqi, his ex-wife and boss, (i) 1109 Lakestream Dr, Plano, Texas 75075 by deed dated July 18, 2018 [EX AA], and (ii) 14411 Tanglewood Drive, Farmers Branch, Texas 75234 by deed dated on or about March 13, 2019 [EX BB].

23.   Defendant failed to identify the following payments made to Jamela Siddiqi in his SOFA, questions 8 and 18:

a) Check No. 1574 in the amount of $1,000.00 on June 7, 2019 [EX Z, pg. 1500]; and

b) Electronic transfer of $25,000.00 from Savings Account on February 8, 2018.

[EX Z, pg. 1285; EX DD, pg. 198].

24.   On March 5, 2020, Trustee filed his Objection to Debtor's Exemption [EX D; EX CC, ¶ 6].

25.     On September 28, 2020, the Court entered it's *Agreed Order Regarding Trustee's Objection to Exemption* [EX E] (the "<u>Exemption Order</u>").[7] Defendant failed to comply with the Exemption Order by not (i) identifying and turning over his non-exempt vehicle with titles, within ten (10) days following entry of the Agreed Order and failing to amend his Schedules within the allotted time period. [EX CC, ¶ 7]. Consequently, on September 3, 2021, the Trustee filed a *Motion to Show Cause Why the Debtor Should Not be Held in Contempt or Sanctioned* [EX F; EX CC, ¶ 7] seeking a hearing to show cause why Defendant should not be held in contempt for failing and refusing to comply with the Exemption Order.

26.     On October 22, 2021, the Court entered its *Order of Contempt* [EX G] finding that Defendant was in contempt of court for failure to comply with the Exemption Order and ordering him to turn over the non-exempt vehicle and to amend his Schedules as the that order required within seven calendar days. [EX G; EX CC, ¶ 8].

27.     On multiple occasions during the course of the Bankruptcy Case the Trustee requested Defendant to produce documents and financial information on multiple occasions. [EX H; EX J]. Despite these requests, the Defendant repeatedly failed to provide documentation and financial information from which to determine his financial condition. In particular, Defendant failed to produce banking and credit card statements, tax returns and other documentation to the Trustee from which Defendant's financial condition could be determined as of the Petition Date and within the four (4) years prior thereto. [EX CC, ¶ 9]. The limited documents the Debtor produced were limited [EX CC, ¶ 9; see EX I; EX L].

28.     In November 2018, a subpoena (the "<u>Subpoena</u>") was issued to Defendant for the

---

[7] The Exemption Order required Defendant to (i) amend his Schedules B and C to provide correct description of his vehicles, (ii) identify which vehicle he claimed as exempt, (iii) turn over to me, as Trustee, the vehicle that he was not claiming exempt, (iv) amend Schedules B and C to include a detailed list of certain of his personal property as outlined in the Agreed Order, and (v) amend his exemptions and turn over the non-exempt vehicle to me, the Trustee, within 10 days of entry of the order. [EX CC, ¶ 6].

production of various documents in relation to an adversary proceeding styled *Mark A. Weisbart,*

*Trustee v. Jamela Siddiqi*, Adv. No. 20-0403 (the "Avoidance Adversary"). [EX K]. Defendant

did not comply with the subpoena other than to produce documents that were duplicative to

documents previously produced to me in response to document requests during the course of his

bankruptcy case.

29.    As a consequence, the Trustee filed a *Motion to Compel Compliance with Subpoena*

*and Recovery of Fees and Costs* seeking to compel Defendant's compliance with the Subpoena

Defendant to produce the requested documents. [EX CC, ¶ 11; EX M] (the "Motion to Compel").

30.    In his response to the Motion to Compel, Defendant admitted the following:

a)    as to Request #1 - he "did not maintain personal records for the time period in
question other than mortgage statements and a few credit card statements;" that
he maintained records for 2019 but did not maintain records for 2018; [8]

b)    as to Request # 2 – he did not maintain records for the time period requested
but had records for 2019;[9]

c)    as to Request # 3 – he did not maintain records for 2018 but produced records
for 2019;[10]

d)    as to Request # 4 – other than a few statements he did not maintain credit card
statements for 2018;[11]

e)    as to Request # 7 – he did not maintain phone records;[12]

[EX N, pg. 2 (emphasis added)]

---

[8] Request # 1 was "[a]ll Documents which identify or evidence all of your debts or liabilities for
the time period January 1, 2018, through December 31, 2018." [EX M, p. 2].

[9] Request # 2 was "[a]ll Documents which identify all claims asserted against You for the time
period January 1, 2018, through December 31, 2018. [EX M, p. 3].

[10] Request # 3 was "[a]ll of Your bank account statements for calendar year 2018." [EX M, p. 3].

[11] Request # 4 was "[a]ll of Your credit card statements for 2018." [EX M, p. 3].

[12] Request # 4 was "[a]ll bills from phone companies for the period May 1, 2017, through March
31, 2019, that identify and evidence Your phone calls and texts to and from third parties. [EX M, p. 3].

31.     On February 5, 2021, the Court entered its *Order to Compel Compliance with Subpoena* [EX O] (the "Compliance Order") granting the motion and requiring Defendant to produce the documents requested or an affidavit detailing why the documents were not produced and why they were not available for production. The order further required Defendant to produce information concerning his financial records that would allow me contact third parties to obtain the records. Rather than produce any documents, on February 24, 2021, Defendant submitted his *Affidavit of Mohammad Siddiqi in Support of Response to Motion to Compel* [EX CC, ¶ 12; EX P] providing a general explanation that he was unable to find or obtain the documents.

32.     At Defendant's deposition on March 24, 2021, it was apparent that he made virtually no effort to recover or obtain the documents requested. Specifically, Defendant testified that:

> a)   He contacted the IRS to obtain the tax returns for Hiba Entertainment, Inc. (his wholly owned company) once and after an hour he just hung up; that he did not send them any letter or go to the IRS website to retrieve the tax returns;
>
> b)   After entry of the Compliance Order he called Citibank and was told they didn't have anything to provide him on his Citi credit card; and other than call his attorney and look for documents he didn't take any other actions to comply with the Compliance Order; and
>
> c)   He did not go back to his tax preparer to get tax returns

[EX CC, ¶ 13; EX R, pgs. 8-10, 16-17, 20-23].

## VI. RELIEF REQUESTED

33.     Plaintiff, pursuant to Rule 56, made applicable hereto by Rule 7056, requests summary judgment on the following claims as there is no genuine dispute of any material fact that would preclude judgment on the claims, and that Plaintiff is entitled to summary judgment thereon as a matter of law:[13]

---

[13] See, FED.R.CIV.P. 56(a) ("A party may move for summary judgment, identifying each claim or

a)  That Defendant is denied a discharge pursuant to 11 U.S.C 727(a)(3) since Defendant failed to keep or preserve recorded information, including books, documents, records and papers, from which his financial condition or business transactions might be ascertained, and his failure to act was not justified under all the circumstances of the case.

b)  Defendant is denied a discharge pursuant to 11 U.S.C. §727(a)(4)(A) since Defendant knowingly and fraudulently, in connection to his chapter 7 case, made a false oath or account.   The Schedules and Statement of Financial Affairs filed in this case have material omissions related to the Debtor's financial transactions and assets. Defendant falsely swore to the accuracy of his Schedules and Statement of Financial Affairs when his electronic signature was affixed to those documents and submitted to and filed with the Court, and Defendant's Declaration of Electronic Signature was submitted to the Court. Defendant again falsely swore to the accuracy of those documents at his meeting of creditors.

c)  Defendant is denied a discharge pursuant to 11 U.S.C. §727(a)(4)(D) as he has withheld from the Trustee, an officer of his bankruptcy estate entitled to possession under title 11 of the United States Code, recorded information, including books, documents, records and papers, relating to his property or financial affairs.   During the course of Defendant's bankruptcy case the Trustee has repeatedly requested Defendant, through his counsel, to produce recorded information. The Trustee received little of the information requested.

d)  Defendant is denied a discharge pursuant to 11 U.S.C. §727(a)(6)(A) since he refused

---

defense – or the part of each claim of defense – on which summary judgment is sought."

to obey lawful orders entered by the Court in his bankruptcy case. Specifically, Defendant failed to obey the Court's Exemption Order [EX E] entered on September 28, 2020, and its Compliance Order [EX Q] entered and February 5, 2021.

## VII.  SUMMARY JUDGMENT STANDARD

34.     Pursuant to Rule 56, incorporated herein by Rule 7056, a court shall grant summary judgment if a moving party shows there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Such showing must be supported by citation to particular parts of materials in the record.[14]

35.     Under this standard, the moving party bears the initial burden of informing the court the basis of its motion. *Celetox Corp. v. Catrett*, 477 U.S. 317 (1986). Rule 56 imposes the initial burden of production on the moving party to make a *prima facie* showing that it is entitled to summary judgment. *Willis v. Roche Biomedical Laboratories, Inc.*, 21 F.3d 1368, 1371 (5th Cir. 1994).

36.     The movant need only establish that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

37.     A party satisfies this burden by supporting its assertion by

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[14] The record may include depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or the showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1).

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

See, Rule 56(c)(1)

38.     Once the movant carries this initial burden, the burden shifts to the nonmovant to establish the existence of a genuine issue of fact for trial. *Celetox*, 477 U.S. at 323-26.   The nonmovant must meet its burden by setting forth specific material facts that create genuine issues for trial.   *Anderson*, 477 U.S. at 256-57.

39.     Applying these standards, the undisputed summary judgment evidence establishes there exists no genuine dispute of any material fact that precludes summary judgment in favor of Plaintiff on the claims raised in the Complaint. Consequently, Plaintiff is entitled to judgment as a matter of law on those claims for which relief is requested herein.

## VIII.   ARGUMENT & AUTHORITIES

40.     A debtor is entitled to a discharge under Section 727(a) unless denial under one of the enumerated exceptions is established by an objecting party. To prevail, the elements of an objection to discharge need only be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *Everspring Enter., Inc. v. Wang (In re Wang)*, 247 B.R. 211, 213-14 (Bankr. E.D. Tex. 2000).

41.     Here, the undisputed summary judgment evidence establishes, by a preponderance, that Defendant's actions and conduct – in filing the Schedules and SOFA with significant and material omissions, failing to maintain and preserve recorded information, including bank accounts and credit card statements, withholding recorded information from the Trustee and is failure to obey orders of the Court –warrant denial of Defendant's discharge pursuant to Sections 727(a)(3), (a)(4)(A) and (D), and/or (a)(6)(A).

### A.   Discharge Must Be Denied Under Section 727(a)(3)

42.   Defendant's discharge must be denied under Section 723(a)(3). This provision
provides that "[t]he court shall grant the debtor a discharge, unless—

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or
> preserve any recorded information, including books, documents, records, and
> papers, from which the debtor's financial condition or business transactions
> might be ascertained, unless such act or failure to act was justified under all of
> the circumstances of the case. . . .

11 U.S.C. § 727(a)(3).

43.   In short, this provision enforces the notion that a debtor's maintenance of
adequate financial records is a prerequisite to granting a discharge in bankruptcy. A discharge will
be denied to an individual debtor under this subsection when there is a failure to preserve
documentation from which parties entitled to such documentation can ascertain his financial
condition and determine the nature of his financial dealings. Individuals who desire the privilege
of a discharge are required to provide their creditors "with enough information to ascertain the
debtor's financial condition and track his financial dealings with substantial accuracy for a
reasonable period past to present." *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996); *Pher Partners
v. Womble (In re Womble)*, 289 B.R. 836, 856 (Bankr. N.D. Tex. 2003) ("Creditors are entitled to
written evidence of the debtor's financial situation and past transactions; maintenance of such
records is a prerequisite to a discharge.").

44.   Section 727(a)(3) is intended to allow creditors and/or the trustee to examine the
debtor's financial condition and determine what has passed through a debtor's hands." *Neary v.
Guillet (In re Guillet)*, 398 B.R. 869, 888 (Bankr. E.D. Tex. 2008) (citations and internal quotations
omitted).

45.   Plaintiffs have the burden to prove that Defendant failed to keep and preserve
financial records and that this failure prevented Plaintiffs from ascertaining the financial condition
of Defendant and HMC.  *See The Cadle Company v. v. Duncan (In re Duncan)*, 562 F.3d 688,

695 (5th Cir. 2009); *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003). If this initial burden is satisfied, the burden shifts to the Defendant to prove that the inadequacy is justified under the circumstances. *See Id.*

46.     Under §727(a)(3), a plaintiff must prove that a debtor: (1) failed to keep and preserve financial records; and (2) that this failure prevented the plaintiff from ascertaining the debtor's financial condition. *Dennis*, 330 F.3d at 703. Intent is not an element. The premise of the subsection is that such financial documents would have been available under normal circumstances except for the failure of the debtor to *maintain or preserve* them.

47.     Here, Defendant failed to maintain and preserve his financial records and those of this wholly owned company. Defendant admitted to his failure in maintaining documents for the year 2018 (just ten months prior to the Petition Date) relating to or evidencing (i) his debts and liabilities for 2018, (ii) claims third parties had against him during 2018, (iii) his personal bank records and credit card statements for 2018, and (iv) his phone records for 2018. [EX N, pg. 2; EX M, pgs. 2-3].

48.     Defendant further failed to maintain original or copies of tax records, tax returns, conveyance documents, automobile titles, corporate ownership records which would identify his ownership, values, and entitlement to exemptions to his scheduled assets and aid in identifying his hidden assets and prepetition transfer of assets. Further, Debtor failed to maintain or obtain records which identify prepetition financial transactions which would identify potential preference and fraudulent transfers.   Finally, Debtor failed to maintain or preserve any records whatsoever with respect to Hiba or his other entities' closing, as to Hiba, that the records were destroyed.   Debtor claimed the business was dead although he apparently continues to operate under the name AZ & Hiba Entertainment, Inc. Because of Defendant's failure to maintain and preserve these, and other records, Trustee was unable to determine Defendant's financial condition and evaluate and his

prepetition transactions.

49.     Lastly, there is no evidence, nor has Defendant provided any, of justification for his failure to maintain and preserve his personal records or those of Hiba.

50.     Based on these failures, Defendant's discharge must be denied under Section 727(a)(3).

**B.  Discharge Must Be Denied Under Section 727(a)(4)(A)**

51.     Defendant's discharge must be denied under Section 723(a)(4)(A). This provision provides that "[t]he court shall grant the debtor a discharge, unless— the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

52.     The Fifth Circuit has explained that:

> To prevail on a claim under this subsection, an objecting plaintiff (a creditor or the trustee) must prove by a preponderance of the evidence "that (1) the debtor made a . . . statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case."

*Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009) (alterations in original) (quoting *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001)); *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005). Proof of fraudulent intent may be shown by either an actual intent to deceive or a reckless indifference to the truth. *Sholdra*, 249 F.3d at 382–83. "Circumstantial evidence may be used to prove fraudulent intent, and the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent." *Duncan,* 562 F.3d at 695; *see also Matter of Reed*, 700 F.2d 986, 991 (5th Cir. 1983) ("Fraudulent intent of course may be established by circumstantial evidence, or by inferences drawn from a course of conduct."); Even if the Debtors had no actual intent to defraud, fraudulent intent may be established *Benchmark Bank v.*

*Crumley (In re Crumley)*, 428 B.R. 349, 367 (Bankr. N.D. Tex. 2010) (fraudulent intent may be established "through the cumulative effect of a large number of falsehoods in a debtor's schedules as evidence of a reckless disregard for the truth.").

53.    "False statements in the debtor's schedules or false statements by the debtor during the proceedings are sufficient to justify denial of discharge." *Duncan,* 562 F.3d at 695 (citing *Beaubouef,* 966 F.2d at 178.) Further, the materiality of an omission is not solely based on the value of the item omitted or whether it was detrimental to creditors. *Id.* Rather, the statement need only "bear [ ] a relationship to the bankrupt's business transactions or estate, or concern[ ] the discovery of assets, business dealings, or the existence and disposition of his property." *Beaubouef*, 966 F.2d at 178 (quoting *In re Chalik*, 748 F.2d 616, 617 (11th Cir. 1984)).

54.    False oaths sufficient to justify the denial of discharge include "(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).[15]

55.    "In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors."… "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Beaubouef*, 966 F.2d at 178.

56.    The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. It makes no difference that he does

---

[15] Bankruptcy Schedules constitute statements under oath within the meaning of § 727(a)(4)(A). *In re Beaubouef*, 966 F.2d at 178 n. 2 ("'See Bankruptcy Rule 1008, [a]ll petitions, lists, schedules, statements of financial affairs, [etc.] shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.'")

not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them. The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act. *In re Beaubouef*, 966 F.2d at 178, quoting *In re Chalik,* 748 F.2d 616, 617 (11th Cir.1984).

57.     The undisputed summary judgment evidence is clear that Defendant has not cooperated with the bankruptcy process and has not been forthcoming about his assets, his financial condition or his prepetition transfers to provide the Trustee satisfactory and sufficient information to afford Plaintiff the ability to undertake an examination of his financial conditions and transactions.

58.     Defendant has knowingly and fraudulently made numerous false oaths during this case and the Avoidance Proceeding. Specifically, Defendant's oath on his original and amended Schedules and the SOFA were false as those documents failed to disclose his ownership of the Knox Property and potential other real estate holdings from which he received rental payments and the HUD Payments, his interests in DFW Investigation and Protection, Inc. and AZ & Hiba Entertainment, Inc., income during the years 2017, 2018 and 2019 and transfers of funds and real property to his ex-wife, Jamela Siddiqi. These omissions were material to the Case as they prevented the Trustee to ascertain the full nature of Defendant's assets and evaluate and fully investigate potential avoidance actions against third parties.

59.     Defendant's oath at the Initial Meeting and Continued Meeting was false where he swore under oath that the Schedules and SOFA were true and correct and there were no changes necessary to those documents.

60.     Defendant falsely testified at his deposition in March 2020 that AZ & Hiba did not have a bank account when within a year of the Petition Date he received several monetary transfers from that entity.

61.     Even though AZ & Hiba and DFW Investigation and Protection, Inc. may not have operated or had little operations, Defendant was obligated to disclose his involvement in those entities.

62.     Based on the foregoing, the undisputed summary judgment evidence is clear that Defendant actions violated Section 727(a)(4)(A). Accordingly, Defendant's discharge must be denied.

### C.  Discharge Must Be Denied Under Section 727(a)(4)(D)

63.     Defendant's discharge must be denied under Section 723(a)(4)(D). This provision provides that "[t]he court shall grant the debtor a discharge, unless— the debtor withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs."   11 U.S.C. § 727(a)(4)(D).

64.     A debtor "knowingly and fraudulently withholds records when the failure to produce requested records is an attempt to hide assets or impede the trustee." *Strauss v. Brown (In re Brown)*, 531 B.R. 236, 265 (Bankr. W.D. Mo. 2015) (quoting *In re Mullin*, 455 B.R. 256, 261 (Bankr. M.D. Fla. 2011)); see also *Gargula v. Lombard (In re Lombard)*, 446 B.R. 344, 349 (Bankr. W.D. Mo. 2010) (analyzing the phrase as it is used in § 727(d)(2) and stating that "'knowingly and fraudulently' . . . requires that the debtor's actions must have been taken with the intent to defraud the trustee, or be so reckless as to justify a finding that the debtor acted fraudulently").

65.     Moreover, a pattern of withholding information and thwarting the bankruptcy process may indicate fraudulent intent. *The Cadle Company v. Guenther (In re Guenther)*, 333 B.R. 759, 767–68 (Bankr. N.D. Tex. 2005) (finding fraudulent intent after debtors had, inter alia, thwarted the discovery and disclosure process at every turn, and had generally been recalcitrant or

slow in providing information).

66.     The undisputed summary judgment material facts as set forth herein clearly establishes that Defendant knowingly and fraudulently withheld from the Trustee his and his wholly owned company's financial records, including bank account and credit card statements, tax returns and other pertinent documents for the purpose of hindering the Trustee's examination and investigation into his prepetition transactions. At every turn Defendant thwarted the Trustee's efforts to discovery information and obtain documents, requiring the Trustee to seek Court intervention on multiple occasions through requests to compel and for show cause.

67.     As a consequence, denial of Defendant's discharge is warranted under Section 727(a)(4)(D).

### D.  <u>Discharge Must Be Denied Under Section 727(a)(6)(A)</u>

68.     Defendant's discharge must be denied under Section 723(a)(6)(A). This provision provides that "[t]he court shall grant the debtor a discharge, unless— the debtor has refused, in the case – (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A).

69.     Here, Defendant violated this provision by failing to comply with the Exemption Order and the Compliance Order. Under the Exemption Order, Defendant was ordered to identify and turnover a non-exempt vehicle and to amend his Schedules to provide more detailed information on his personal property. Despite his agreement to the substance and form of the Exemption Order Defendant openly and defiantly failed to comply with the order.  As a result, Trustee was forced to incur the time and expense of filing a motion to show cause to hold Defendant in contempt resulting in the Court entering the Contempt Order. Under the Compliance Order, Defendant was required to take specific acts to obtain and retrieve his personal financial records to satisfy his obligations under the Subpoena. Despite his representations to the Court that

he could not acquire the documents, Defendant's deposition testimony demonstrates that he did little, if anything, to comply with the Court's directive. See, *Concannon v. Costantini (In re Costantini)*, 201 B.R. 312, 316 (Bankr. M.D. Fla.1996) (finding that debtor violated 727(a)(6)(A) where he refused to obey an order to produce documents to trustee and no meaningful documents were produced and such documents were necessary for the trustee's investigation of the debtor's activities)

70.     Defendant's actions is refusing to comply with the Court's orders over a period of a year and a half clearly constitute refusal to obey the lawful orders of the Court. As a consequence, Defendant's discharge must be denied pursuant to Section 727(a)(6)(A).

## IX. CONCLUSION

71.     Based on the foregoing undisputed material facts set forth above While there are multiple claims raised under the provisions of Section 727, and Debtor clearly violated these provisions, any one of these violations is grounds to deny Debtor's discharge.

## X. PRAYER

WHEREFORE, premises considered, Plaintiff prays that the Court render summary judgment in favor of Plaintiff denying Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3), (a)(4)(A) and (D), and/or (a)(6). Plaintiff further prays that the Court grant him such other and further relief to which he may be justly entitled.

Respectfully Submitted,

/s/ Mark A. Weisbart
Mark A. Weisbart
Texas Bar No. 21102650
HAYWARD PLLC
10501 N Central Expy, Suite 106
Dallas, Texas 75231-2203
(972) 755-7103 Phone
mweisbart@haywardfirm.com

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing instrument was served on the below party as well as the parties receiving electronic notice through the Court's electronic notification system as permitted by Appendix 5005 III. E. to the Local Rules of the U.S. Bankruptcy Court for the Eastern District of Texas this the 14th day of January 2022.

Eric A. Liepins
eric@ealpc.com
*Counsel for Defendant*

/s/ Mark A. Weisbart
Mark A. Weisbart